IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HARRY DAVIS, et al., | ) | |
| | ) | Case No.  1:04CV1755 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| HOUSEHOLD REALTY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |

This is an action brought under federal and state consumer protection law, in which plaintiffs

Harry and Sylvia Davis of Maple Heights (hereinafter, "the Davises") seek an award of damages from

Household Realty Corporation ("HRC"), a Delaware corporation engaged in the business of providing

mortgage loans to Ohio residents. The Davises allege that Household acted unconscionably and in

violation of federal and state law when it engaged them in a loan transaction resulting in a mortgage

bearing an annual percentage rate of almost 15%, and finance charges totaling more than 3.5 times the

principal. The Davises claim that Household engaged in numerous deceptive and fraudulent practices

in inducing them to participate in the loan transaction.

Now before the court are two motions filed by HRC: a motion to dismiss the Davises' Amended

Complaint, or in the alternative, for a permanent stay (Docket No. 11); and a motion to stay the litigation

pending arbitration (Docket No. 20). For the following reasons, the court denies the first motion, and

grants the second.

## I. Background

On November 22, 2000, the Davises entered into a loan agreement with HRC, for a total principal amount of $95,999.01. The loan allowed the Davises to secure a mortgage on property located at 5154 Miller Drive in Maple Heights, Ohio. The Davises subsequently entered into a second loan with HRC, for a principal amount of $5,150.00.

In their amended complaint, the Davises allege that HRC did not provide a good faith estimate of the loan's amount and terms prior to submitting loan paperwork for the Davises to sign. They also allege that HRC representatives "hurried and pressured" them into signing loan papers without reading them, and that as a result the Davises were duped into agreeing to a mortgage bearing the purportedly unconscionable finance charges ($338,084.40) and annual percentage rate (14.894%). Finally, the Davises allege that they were fraudulently induced into signing an agreement for the second, smaller loan.

The Davises claim that HRC's conduct in the aforementioned loan transactions resulted in violations of Ohio's Consumer Sales Practice Act, O.R.C. § 1345.01, *et seq.*, the federal Home Ownership Equity Protection Act, 15 U.S.C. § 1639 *et. seq.*, Truth-in-Lending Act, 15 U.S.C. § 1601 *et. seq.*, Fair Debt Collection Practices Act, 15 U.S.C. § 1692, Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605. The Davises also raise common law claims of fraud, civil conspiracy, negligent misrepresentation, intentional infliction of emotional distress, breach of fiduciary duty, and breach of duty of good faith and fair dealing. The Davises seek recission of the loan contract, as well as damages of "at least" $500,000.

On February 2, 2002, the Association of Community Organizations for Reform Now (ACORN) filed a class action lawsuit against HRC in the Northern District of California. *See In Re: Household*

*Lending Litigation*, Case No. C02-1240 CW.  The California court approved class certification, oversaw

the opt-out process, and finally approved a finalized class settlement.  On April 30, 2004, the case was

dismissed with prejudice.

On July 8, 2004, the Davises filed this suit in the Cuyahoga County Court of Common Pleas.

On August 30, 2004, HRC removed the case to this Court on the basis of diversity jurisdiction (*see*

Docket No. 1).  The Davises then filed an Amended Complaint, in which they allege that every violation

alleged in this action occurred after December 24, 2003.

## II. Discussion

HRC seeks dismissal of this action, based on its contention that all claims advanced by the

Davises are barred by the doctrine of *res judicata*. Alternatively, HRC seeks a stay of this litigation

pending arbitration. The court agrees that the second course of action is proper.

### A. HRC's Motion to Dismiss

The doctrine of *res judicata* precludes parties from relitigating issues that were or could have

been raised in a previous action, once a final judgment on the merits has been ordered. *Allen v.

McCurry*, 449 U.S. 90, 94 (1980).  The rationale behind the doctrine is to "relieve parties of the cost and

vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions,

encourage reliance on adjudication." *Montana v. United States*, 440 U.S. 147, 153-154 (1979).  HRC

argues that principles of *res judicata* require dismissal of this action, since the Davises were members

of the class whose claims were finally adjudicated in the California litigation.

HRC is indeed correct in its assertion that, if the Davises were members of the class – *i.e.*, if they

received proper notice of the class action, and neglected to opt out of participating – then they will be

bound by the prior adjudication. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874

-3-

(1984).  The Final Approval Order in *In Re: Household Lending Litigation* defined the settlement class

as:

> All current and former borrowers of Household Finance Corporation, Beneficial
> Corporation, Household Insurance Group and Household Realty Corporation... who: (a)
> On or after January 1, 1999 and on or before December 24, 2003, entered into a real
> estate secured loan originated or processed at a United States retail consumer lending
> branch of HFC/Beneficial or of any subsidiary or parent whether direct or indirect, of
> HFC/Beneficial...

According to their amended complaint, the Davises entered into a loan agreement with HRC on

November 22, 2000, a date obviously within the specified time frame.  The California court found that

notice was properly effectuated by mailings to 900,000 potential class members and by a newspaper

article published in *USA Today* on February 11, 2004 and February 19, 2004.  HRC has also established

that the Davises did not opt out of the class; their names do not appear on the opt-out list. *See* Docket

No. 11, Exhibit B. The Davises are therefore unnamed parties bound by the *In Re: Household Lending*

*Litigation* settlement.

As such, the Davises' claims are subject to the California court's Final Approval Order, which

defines the class members' "Released Claims" as follows:

> [A]ll claims, causes of action or liabilities which any and all Settlement Class Members
> may have or have had as of December 24, 2003, including without limitation, in contract,
> in tort (including but not limited to personal injury and emotional distress), statute,
> regulation or common law, whether in an arbitration, administrative or judicial
> proceeding, whether known or unknown, suspected or unsuspected, threatened or
> unasserted, actual or contingent, liquidated or unliquidated, that arise from or are related
> to the matters alleged in the Consolidated Action ...

HRC contends that this provision precludes the Davises from bringing any of the claims asserted

by their amended complaint.  The court is not persuaded by this argument.  The "Released Claims"

provision explicitly applies to "all claims... Settlement Class Members *may have or have had as of*

*December 24, 2003*".  The Davises now allege that all of their claims arose after this cut-off date. Such

factual allegations must be accepted as true when ruling on a motion to dismiss. *See, inter alia, Gazette*

*v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Therefore, based solely on the allegations as they

are now phrased, the doctrine of *res judicata* does not operate to bar the Davises' suit.

**B. HRC's Motion to Stay Pending Arbitration**

Under the terms of the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1, *et seq.*, "A written

provision in any ... [commercial] contract ... to settle by arbitration a controversy thereafter arising out

of such contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract." *Id.*, § 2. In determining whether a valid arbitration

agreement exists and whether a dispute falls within its ambit, this court's review is fairly limited.  *See*

*Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 625 (6th Cir. 2003).  "Any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, or delay, or a like defense to

arbitrability." *Id.* at 625 (citation omitted).

HRC has provided ample evidence that a valid and mandatory arbitration agreement exists, and

that the Davises' dispute falls within its ambit. The Arbitration Rider submitted by HRC as Exhibit A

to HRC's motion to stay pending arbitration clearly states that HRC, as Lender, "may request that any

claim, dispute or controversy ... arising from or related to [the loan agreement] ... be resolved ... by

binding arbitration." Docket No. 20, Exhibit A. Such claims include, but are not limited to, "[those]

based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity[.]" *Id.*

The considerable breadth of this language must be contrasted with this court's previous finding that

strong public policy considerations support the enforcement of similar provisions. *See, e.g., Gegen v.*

-5-

*Com-Corp Industries*, No. 05CV2373, Docket No. 13 (filed Dec. 20, 2005); *Nguyen v. City of Cleveland*, No. 99CV2990, Docket No. 83 (filed March 31, 2004).

The Rider submitted by HRC was clearly signed by Harry Davis, and the claims contained in the amended complaint are clearly subject to arbitration under the Rider's terms. Moreover, HRC has drawn the court's attention to several instances in which courts have enforced arbitration agreements bearing similar, or even identical, language. *See, e.g., Sanicky v. Beneficial Ohio*, No. 02CV1191 (N.D. Oh. Sept. 11, 2002)(Wells, J.); Cross *v. Beneficial Ohio*, No. C-3-01-463 (S.D. Oh. Sept. 18, 2002).

In response, the Davises raise various arguments concerning the validity of the Arbitration Rider, and the circumstances surrounding its signing. The Davises acknowledge that these arguments proceed directly, and do not materially differ, from their contentions concerning the validity of the loan agreement to which the Rider was attached. Such an admission is fatal to their efforts to proceed in federal court. The Supreme Court has held that, in considering the validity of arbitration clauses, "the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally. ... [I]n passing upon [an] application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). In brief, "the arbitration agreement is effectively considered as a separate agreement which can be valid despite being contained in a fraudulently induced contract." *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 933 (6th Cir. 1998)(citing *Prima Paint, id.* at 405.) Absent some proof that the Rider was both signed separately from the loan papers themselves and signed as the product of fraud or unconscionable behavior by HRC, the court must enforce the Rider's requirement that "all claims ... including the validity or enforceability of this arbitration clause" be submitted to the arbitrator.

-6-

HRC has therefore properly established its right to have the issues raised by the Davises resolved via arbitration rather than by federal litigation. HRC is also correct to request a stay pending the completion of arbitration proceedings, rather than outright dismissal of the action. Unlike *Gegen* or *Nguyen, supra*, this case does not lend itself to the entry of an order which "indicate[s] a final decision on the arbitrability issue and leave[s] nothing more for the court to do." *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1098 (6th Cir. 2002). Instead, the facts of this case demand "[a] stay of the proceedings suggest[ing] that the district court ... might have more to do than execute the judgment once arbitration has been completed." *Id.* at 1099. The example cited by the *ATAC* court is precisely on point: "For instance, should the arbitrator conclude that some or all of [the plaintiffs'] claims are not subject to arbitration (perhaps because [of] fraud in the inducement of the arbitration clause), those claims could be litigated following arbitration." *Id.*

### III.  Conclusion

For the foregoing reasons, the Court denies HRC's motion to dismiss, and grants the motion to stay the litigation pending arbitration.

IT IS SO ORDERED.

   s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE